## NOBLITT–SPARKS, INDUSTRIES, Inc., v. EXCEL AUTO RADIATOR CO.
### No. 6403.

Circuit Court of Appeals, Seventh Circuit.
May 17, 1938.

Wilkinson, Huxley, Byron & Knight, of Chicago, Ill. (Verne A. Trask, Thomas P. Jenkins, and George B. Schley, all of Indianapolis, Ind., of counsel), for appellant.

Arthur W. Carlson and Max W. Zabel, both of Chicago, Ill., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

Plaintiff charged defendant with infringement of its United States patents Nos. 1,818,268, issued August 11, 1931; 1,872,794, issued August 23, 1932; and 1,870,378, issued August 9, 1932. The defense was invalidity and noninfringement. The claims relied upon in the first named patent are 1 and 2; of the second named, claims 1, 2, 3, 8 and 9 and of the third named, claim 6.

The court found against the defendant on the defense of infringement on all of the

raised and determined in the first." (citing cases.)
[5] 144 U.S. 653, 658, 12 S.Ct. 781, 783, 36 L.Ed. 579.

claims except 8 and 9 of patent No. 1,872,-794, but at the same time found all of the claims to be invalid for the lack of patentable invention over the prior art and dismissed the bill of complaint.

All the patents in suit relate to automobile body heaters which warm the interior of the automobile body by heat derived from the same liquid employed to cool the automobile engine. Heaters generally of the character of those here involved, consist of a casing providing an inclosure for a heat exchanging core through which the engine-cooling liquid is circulated. Air forced through this core by a rotating fan is warmed by its passage through the core and delivered from the casing into the interior of the automobile body. Prior to the alleged inventions set forth in the patents in suit, it had been a rather common practice to provide means for controlling the stream of warm air discharged from the heater, such means frequently being in the form of one or more vanes disposed adjacent to the opening through which the warm air emerged, and adjustable in different directions to deflect the stream of warm air upwardly, downwardly, to the right or to the left.

The first two named patents in suit relate to improvements in the means for controlling the warm air discharged from the heater. The last-named patent in suit is directed to the manner or means of mounting or securing the heater in place on the dash of the automobile body.

That devices similar to those described in the patents in suit had long been in use, is not disputed. In fact, it is conceded "they are admittedly only additions to or substitutes in an old type of heater. Each is a 'step only in the march of improvement.'" The very narrow field existing between the devices described in the first two named patents in suit and the prior art, if they are to be distinguished, is frankly admitted by plaintiff in its brief in the following rather significant statement: "It is admittedly true that the primary, or air-regulating, function of the structures to which patents Nos. 1,-818,268 and 1,872,794 relate could, in some respects, be performed almost as well by prior art arrangements as by the patented devices. But no prior art arrangement approached the devices of these patents in those added novel features which render plaintiff's heaters—and defendant's—so well suited to installation in an automobile."

A similar admission is made with reference to the third patent in suit, wherein it is stated: "Similarly it is true of the third patent in suit (No. 1,870,378) that insofar as it is directed to means for attaching a heater to the dash of the automobile body it accomplishes a result which, broadly, was old."

It is claimed, however, for all the patents in suit that they possess certain novel and useful features which characterize and distinguish them from the prior art. Both patents, Nos. 1,818,268 and 1,872,794, relate to means for regulating the stream of heated air discharged from the heater. They have numerous features in common and in so far as the question of validity is concerned, may be treated together. Claim 2, recognized by the parties as typical of those involved in these patents, is found in the footnote.[1]

The essential improvement claimed for these patents over the prior art is in the control exercised over the quantity of air discharged. It is claimed that prior to the alleged inventions in question, the control of the quantity of air discharged was unsatisfactory, while admitting that the direction in which it was discharged was found in such prior art. In both of these patents, it is claimed the regulation of the air stream is secured through the medium of a plurality of dampers or shutters which are mounted for angular adjustment about parallel axes in a peripheral frame. In patent No. 1,818,-268, the peripheral frame is square in shape and may be mounted in a square opening in the heater-front or shield either with its shutters extending vertically or horizontally. In patent No. 1,872,794, the frame is circular and is mounted for continuous rotation on the heater-front or shield so that the shutters can be disposed with their axes at any desired angle to the horizontal. In both

---

[1] "2. The combination of a heating element adapted to heat a stream of air passed therethrough, a supporting shell for said heating element having an aperture therein for entrance of air to be heated, a second shell member, a frame member having a portion interposed between said heating element and said second shell and having an aperture therein for exit of heated air, fastening means for fastening said shells and said heating element together, and an adjustable damper mechanism mounted on said frame and positioned within the aperture of said frame member for controlling and directing said heated air."

patents all the air discharged from the heater passes through the central opening in the peripheral frame and is controlled, both as to quantity and direction, by the shutters mounted in that opening. In patent No. 1,818,268, it is necessary to remove and replace the heater-front in order to change the position of the shutter-carrying frame. In patent No. 1,872,794, the frame is frictionally held in place by plates and can be adjusted to any angular position by means of a handle projecting radially therefrom.

Among the many prior patents relied upon as disclosing the prior art, the most pertinent, perhaps, are McCreery, No. 574,104, issued December 29, 1896, and Bates, No. 1,830,691, issued November 3, 1931.

The object of the invention described by McCreery was to "produce an outlet from which the air may be emitted at varying angles and in different directions." Claim 1 in said patent is "an outlet provided with an axially-revoluble cap, and a valve in such cap, consisting of several leaves, whereby the opening in the outlet may be placed in different positions and be of different sizes, as set forth." It seems that the essential element described in claim 1 of patent No. 1,818,268 in suit, not described by McCreery is "a heater having a heating element and means for directing a stream of air to be heated for certain heating elements," and that the dampers are individually adjustable. Whether it would have constituted invention to apply the old McCreery structure to any hot air duct, even though not theretofore shown to have been so applied, is not necessary for us to determine in view of the fact that Bates applied what seems to us an equivalent structure to such an automobile heating element. Bates stated the object of his invention was "to provide not only for a complete heat control but a control that is instantaneous as well and is, moreover, absolutely positive in its action so as to give just the exact amount of heat desired, and directed toward any part of the car desired." Bates shows an automobile body heater having an element corresponding to the heater front or shield of the patents in suit. It is said, however, that

his heater is utterly devoid of anything corresponding to the frame carrying the shutters of the patent in suit. The shutter structure in the Bates patent is supported from a center mounting and discloses only two air deflectors. We are of the opinion that such distinctions as have been pointed out are not sufficient to enable plaintiff to escape the defense of invalidity or that invention over the prior art may be made to depend upon the number of heat deflectors or the particular manner in which they are mounted. In either instance, the same results were obtained in the same or similar manner. We therefore conclude that the claims involved in patents Nos. 1,818,268 and 1,872,794 are invalid.

The remaining patent in suit, No. 1,870,378, as heretofore stated, relates to a mounting structure for automobile heaters. Claim 6 (footnote [2]) of this patent is the only one involved. As will be noted, this claim describes "a tubular member extending through said dashboard, means for clamping said member to the dashboard, and a frame structure supported by said tubular member on which said radiator core is mounted, one of said conduits extending through said tubular member."

The chief advantages claimed for this patent are that the number of holes required in the dashboard for the mounting of the heater are reduced thereby, making it less difficult to mount and that the conduits are relieved at least to a considerable extent from carrying the weight of the heater, thereby permitting the conduits to be made of more pliable material and diminishing the likelihood of leakage at points of contact. The language of this claim, it seems to us, makes it readable only upon a device with one tubular member extending through the dashboard, through which the conduits are to be extended. As construed by the plaintiff, however, the claim is sufficiently broad to include more than one tubular member, that is a tubular member for each of the necessary conduits, and in fact, only such heaters have been manufactured by the plaintiff. Defendant contends that with such construction it is not readable on de-

[2] "6. The combination with an automobile heater having a radiator core adapted to be mounted upon the dashboard of the automobile and having conduits connected thereto for conducting water from the cooling system of the automobile through the said radiator, of means for supporting the said heater upon the said dashboard, said means including a tubular member extending through said dashboard, means for clamping said member to the dashboard, and a frame structure supported by said tubular member on which the said radiator core is mounted, one of said conduits extending through said tubular member."

fendant's structure which provides for the extending of both of the conduits through one tubular member located in the dashboard. Inasmuch as we conclude that the patent is clearly anticipated by Bates, No. 1,746,985, there is no occasion for us to make such determination. As plaintiff's manufactured device includes two hollow bolt structures or tubular members, with a conduit extending through each, the weight attached to its argument as to the advantage in reducing the number of holes in the dashboard, is considerably weakened. Formerly, it was customary to have four holes in the dashboard, one each for the extension of the conduits and one each for the insertion of parts for the mounting of the heater. With plaintiff's device, as stated, two holes were used, and with defendant's device, only one. Bates patent, No. 1,746,985, discloses what is referred to as a hollow sleeve fastened to the dash of the car, through which sleeve both of the conduits extend. It is claimed, however, that the drawings in the Bates patent disclose a necessity for the insertion of two bolts to the dash for the purpose of clamping the collars of the tubular member so that it may be firmly mounted, and that thereby three holes were required. We do not see how invention can be made to depend upon the number of holes required to mount and operate such a device. Formerly, four holes were required, Bates required three holes, the plaintiff requires two and the defendant, one. Each might have been some improvement over the other, but certainly not such as to amount to invention.

It also seems that Bates discloses the means of carrying the weight of the mounting structure. In fact, plaintiff so admits in the following language: "In that figure (referring to Figure 3 of the Bates Patent), the tubular member forms with the shroud an integral heater-supporting structure corresponding to the 'frame-structure' of patent No. 1,870,378 in suit." The Bates patent evidently was not cited in the patent office as against the patent in suit. At any rate, there is nothing in the record to so show.

Concluding that the patent in suit is anticipated by the Bates patent, there is no occasion for us to consider the other prior art referred to. Also concluding that all the claims are invalid for want of invention, there is no occasion for us to consider the defense of noninfringement.

The decree dismissing the bill of complaint for want of equity is affirmed.